*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BERNARD GISMONDI, THOMAS CHALIFOUX,
EDWARD KISCH, ARTHUR KNACK, RICHARD RATKE,
JAMES SALLIOTTE, and JEFFREY STONE,
> *Plaintiffs-Appellants,*

*v.*

UNITED TECHNOLOGIES CORPORATION,
> *Defendant-Appellee.*

No. 03-2410

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-73217—Denise Page Hood, District Judge.

Argued: January 26, 2005

Decided and Filed: May 24, 2005

Before: BOGGS, Chief Judge; MARTIN, Circuit Judge; GWIN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Charles Gottlieb, GOTTLIEB & GOREN, Bingham Farms, Michigan, for Appellants.
Daniel A. Schwartz, DAY, BERRY & HOWARD, Hartford, Connecticut, for Appellee.
**ON BRIEF:** Charles Gottlieb, GOTTLIEB & GOREN, Bingham Farms, Michigan, for Appellants.
Daniel A. Schwartz, DAY, BERRY & HOWARD, Hartford, Connecticut, Lawrence S. Gadd,
HARNISCH & ASSOCIATES, Bingham Farms, Michigan, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. The seven plaintiffs in this case are former
employees of United Technologies Automotive, a division of defendant United Technologies
Corporation. On May 4, 1999, United Technologies sold its Automotive division to Lear
Corporation. Subsequently, the plaintiffs sought early retirement benefits from United
Technologies; the Corporation's Benefit Claims Appeal Committee denied the claims. The plaintiffs
then challenged the Committee's denial in the district court. United Technologies moved for

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by
designation.

summary judgment, and the district court granted that motion.  In this appeal, we AFFIRM the judgment of the district court for the reasons discussed below.

I.

While employed with United Technologies, the plaintiffs were participants in its Employee Retirement Plan.  Under the Plan, a participant could receive early retirement benefits if (1) the participant's Severance Date occurred at or after age fifty and (2) the participant's age and sum of continuous years of service equaled or exceeded sixty-five—the so-called "Rule of 65."  The "Severance Date," according to section 2.59(a) of the Retirement Plan, was the earliest of

(i)      the date the employee "quits, retires, is discharged or dies;"

(ii)     the first anniversary of the first date that the employee is absent from work "for any other reason, including layoff, sickness, disability or leave of absence;" or

(iii)    the date within the twelve-month period that the employee "quits, retires, is discharged or dies" after the employee has been absent from work for  "any other reason other than quitting, retirement or discharge."

The central issue in this case is United Technologies's interpretation of section 2.59(a) in denying the plaintiffs' claims for retirement benefits.

After the transfer of the Automotive division to Lear, the plaintiffs applied to United Technologies for early retirement benefits under the Rule of 65.  They claimed that their "Severance Date" should be calculated under section 2.59(a)(ii), because their transfer to Lear should be considered "any other reason" for absence from work.  As a result, they argued, the Severance Date should be May 5, 2000, a year after the sale of the Automotive division to Lear.

United Technologies denied the claim, based on the Committee's finding that the plaintiffs were "discharged" under section 2.59(a)(i) from United Technologies when the division was sold on May 4, 1999.  Because the plaintiffs were only forty-nine years old on that day, they were ruled ineligible for early retirement benefits.

The plaintiffs filed this action in district court, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, challenging United Technologies's interpretation of section 2.59(a) and of the term "discharge" under section 2.59(a)(i).  They argued again that they were entitled to benefits under section 2.59(a)(ii), which allows for an additional year of credited service—the "first anniversary of the first date the Employee is absent from work."  Both parties moved for summary judgment.  The district court, applying an arbitrary and capricious standard of review, found that United Technologies's interpretation of section 2.59(a) was rational.  Therefore, it granted United Technologies's motion for summary judgment.  The plaintiffs timely appealed.

II.

On appeal, the plaintiffs argue that the district court erred in applying an "arbitrary and capricious" standard of review to United Technologies's decision to deny early retirement benefits. In evaluating an administrator's interpretation of a plan governed by the Employment Retirement Income Security Act, the district court applies a de novo standard unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  If the plan gives such discretionary authority, this Court reviews the administrator's decision to deny benefits using "the highly deferential arbitrary and capricious standard of review." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (citing *Firestone Tire*, 489 U.S. at 115).

In this case, the language of the retirement plan expressly grants to the administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Specifically, section 10.5 of the plan states that the Committee is vested with

> all implied powers and duties that are necessary or appropriate to carry out and administer the provisions of the Plan and shall have the following specific discretionary powers and duties: (ii) to interpret the Plan and to decide any and all matters arising hereunder including to determine all questions relating to: (A) the eligibility of persons to receive benefits hereunder; . . . (C) all other matters upon which the benefits or other rights of a Participant or other person hereunder are based, and in so doing, without limitation, the power the right to remedy possible ambiguities, inconsistencies, or omissions by general rule or particular decision.

Thus, we review the district court's grant of summary judgment to "'determine if there is any genuine issue of material fact whether the . . . company's decision to deny benefits was arbitrary and capricious.'" *Killian*, 152 F.3d at 520 (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)).

Under this deferential standard, we will uphold a benefit determination if it is "rational in light of the plan's provisions." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996) (internal quotation marks and citation omitted). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Co. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks and citation omitted). Indeed, we must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants. *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004) (citing *Ross v. Pension Plan for Hourly Employees of SKF Indus., Inc.*, 846 F.2d 329, 334 (6th Cir. 1988)).

Notwithstanding this deferential standard, courts must be aware of a possible conflict of interest and consider it as a factor in determining whether the decision to deny benefits was arbitrary and capricious. *Id.* at 694; *see also Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1069 (6th Cir. 1998) (noting that "'the abuse of discretion or arbitrary and capricious standard still applies, but application of the standard should be shaped by the circumstances of the inherent conflict of interest'") (quoting *Miller*, 925 F.2d at 984). "[I]f a plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire*, 489 U.S. at 115.

As this Court noted in *Killian*, "there is an actual, readily apparent conflict . . ., not a mere potential for one," when the company or plan administrator is the insurer that ultimately pays the benefits. 152 F.3d at 521. Because United Technologies interpreted the terms of the plan for purposes of determining whether plaintiffs should receive early retirement benefits, a conflict of interest clearly is apparent. Thus, the district court erred in failing to take into account the existence of this conflict as a "factor in determining whether there is an abuse of discretion." *Firestone Tire*, 489 U.S. at 115; *Davis*, 887 F.2d at 694. However, based on our analysis of the plaintiffs' arguments below, it is clear that even when we consider the conflict of interest as a factor in our standard of review, we have no choice but to conclude that United Technologies's denial of benefits survives the plaintiffs' challenge because the interpretation of "discharge" is a rational interpretation of the terms of the retirement plan. *See Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1377 (6th Cir. 1994) (noting that when the employee/employer relationship is severed, employment is terminated).

The plaintiffs make two general arguments challenging United Technologies's interpretation of section 2.59(a). First, they argue that United Technologies's interpretation of discharge is

arbitrary and capricious because it is unsupported by the evidence and is inconsistent with past practices. Second, they argue that their Severance Date should be calculated under section 2.59(a)(ii), and that United Technologies's interpretation of that section is arbitrary and capricious.

a.       Meaning of Discharge

The plaintiffs claim that the evidence does not support the conclusion that they were "discharged." They argue that, based on what they were told, they were merely undergoing a "transition" during which they retained the same job duties, reporting structures, pay, benefits, and location. They explain that their seniority carried over to Lear, and that there is no evidence of discharge or rehire announcements, exit or hiring interviews, or personnel file records indicating any discharge.

The plaintiffs rely on a case from the Third Circuit, *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137 (3d Cir. 1993), to support their argument that the effect of a sale to another company does not constitute a "separation from service" for purposes of a retirement plan, and therefore cannot be interpreted as a "discharge." The *Gillis* court noted the long-standing position of the Internal Revenue Service that an employee will be considered separated from service "only upon the employee's death, retirement, resignation or discharge, and not when the employee continues in the same job for a different employer as a result of liquidation, merger, consolidation, etc. of the former employer." *Id*. at 1146. However, in a subsequent decision, the Third Circuit narrowed its ruling in *Gillis* to Employee Retirement Income Security Act cases involving sections 208 and 204(g) of the Act. *Dade v. N. Am. Philips Corp.*, 68 F.3d 1558 (3d Cir. 1995). Those sections are not involved in this case and, given the Third Circuit's retreat, the opinion is not applicable.

The plaintiffs also contend that if they were, in fact, discharged, they were entitled to severance benefits. When they brought this argument to the attention of the company, they were told that it was not United Technologies's policy to make severance payments in cases of transfer and sale. The plaintiffs argue that they cannot be discharged for one purpose but not for another: if they were discharged, then they should receive severance payments; if they were not discharged, then they should receive early retirement benefits. The fact that they received neither, according to the plaintiffs, supports a finding that United Technologies's interpretation is arbitrary and capricious.

The plaintiffs arguments are unpersuasive. As discussed, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis*, 887 F.2d at 693. United Technologies interpreted the sale to mean the discharge of its employees for purposes of its responsibilities for their employee benefits. According to United Technologies, such benefits were taken on by Lear, the purchasing company. Any responsibility on the part of United Technologies was, at that point, discharged. This reasoned explanation is sufficient to overcome the plaintiffs' challenge here.

Furthermore, there is no evidence that the plaintiffs were entitled to severance payments; indeed, their employment was not subject to the terms of any collective bargaining agreement, in which severance benefits are typically set forth. For this reason, the plaintiffs' argument regarding the absence of such payments is without merit.

The plaintiffs also claim that the company's interpretation contradicts its own previous construction of section 2.59(a) and past practices. They say that at the time of sale United Technologies granted additional service time and construed eligibility under the Rule of 65 as of the end of the calendar year. As a result, certain employees received early retirement benefits even though they were only forty-nine years old on May 4, 1999. As United Technologies argues,

however, the plaintiffs have submitted no evidence to substantiate their allegations that United Technologies extended the Severance Date for some but not for others.

>   b.          Section 2.59(a)(ii)

The plaintiffs argue that a more rational interpretation of section 2.59(a) is available. They contend that the sale of the Automotive division and transfer of employees to Lear constituted a reason for "absence from work" under section 2.59(a)(ii), and therefore, as that section directs, the Severance Date should be calculated as May 5, 2000. United Technologies argues, and the district court found, that the additional year provided by section 2.59(a)(ii) was limited to situations in which absence from work resulted from "layoff, sickness, disability or leave of absence."

We agree with the plaintiffs that the language of section 2.59(a)(ii) appears to include, rather than exclude, reasons other than those listed. It seems more appropriate to read section 2.59(a)(ii) as follows:

>   The Severance Date may be "the first anniversary of the first date that the employee is absent from work for any other reason[—i.e., any reason other than those listed in 2.59(i)—] including [but not limited to] layoff, sickness, disability or leave of absence."

United Technologies's interpretation of subsection (ii) to be exclusive, rather than inclusive, appears to be irrational. This determination is of no consequence, however, given our conclusion that the company's interpretation of discharge under section 2.59(a)(i) to include the transfer of employees upon sale of a company division is rational.

III.

For the foregoing reasons, we AFFIRM the judgment of the district court.