**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0605n.06
Filed: August 21, 2006

**No. 05-4096**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARJORIE NICHOLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| UNUM LIFE INSURANCE COMPANY OF | ) | OHIO |
| AMERICA, | ) | |
| | ) | |
| Defendant. | | |

Before: SILER, DAUGHTREY, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge. A registered nurse, Marjorie Nichols worked for Good Samaritan

Hospital for over three years. By virtue of her employment with the Hospital, she participated in

its Long Term Disability Plan, which was covered by Unum Life Insurance. The Plan provided,

*inter alia*, disability income benefits for persons who are totally disabled as defined by the Plan.

Suffering from neck, arm, and back pain, Nichols applied for disability benefits and was denied.

She now appeals the district court's grant of judgment on the administrative record in favor of

Unum, claiming that Unum acted arbitrarily and capriciously in denying her benefits in violation

of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. For the

following reasons, we **AFFIRM**.

**I. Background**

No. 05-4096
*Nichols v. Unum Life Ins. Co.*

Nichols was working as a nurse case manager at the Hospital when she applied for disability benefits in 2002. Her application for benefits was based largely on the diagnoses of her attending physician, Dr. Brian Fonadel, including (1) cervical disc myelopathy, (2) cervical stenosis, (3) lumbar disc myelopathy, and (4) spinal stenosis. Collectively these conditions roughly translate into narrowing of the spinal canal, resulting in neck, arm, and back pain. Dr. Fonadel advised Nichols to restrict her physical activity accordingly, to avoid lifting, bending, pushing, and pulling, and to stand or sit no longer than 30 minutes at a time.

The position of nurse case manager, however, engaged Nichols in some duties that exceeded the limitations recommended by her doctor. Responsible for "facilitating and expediting care delivered to patient during the entire episode of care," the case manager's "principle [sic] duties and responsibilities" were, as one might expect, primarily managerial:

1. Complete[] a comprehensive assessment of patients' clinical, psychological and financial needs utilizing all available resources.

3. Develop[], implement[], evaluate[] and revise[], as necessary, a plan for discharge . . . .

4. Communicate[] discharge care plan, and any changes in the plan to patient, family and all appropriate healthcare professionals.

7. Conduct[] concurrent review of patient records on admission to the hospital . . . .

13. Maintain[] knowledge and understanding of [Health Care Financing Adminstration] regulations, Medicare/Medicaid, managed care and other payer regulations and benefit limits.

14. Act[] as a resource and provide[] education for patients [regarding such regulations].

However, the position also specified that the employee be capable of performing the following routine physical tasks as incorporated into "Working Conditions": (1) walk or stand half the time; (2) use a computer keyboard; (3) use a telephone; (4) lift, move, or transfer patients (weighing up to 300 pounds) with assistance; (5) occasionally carry a 35 pound load; (6) bend or stoop up to 20 times per day; and (7) move patients by pushing them, either in wheelchairs or on a hospital bed. Nonetheless, the job description emphasized the position's managerial functions; one case manager job description included in the record made no mention of any physical requirements.

Given her prescribed limitations, Nichols applied for disability benefits under Unum's long term disability benefits policy. The policy granted Unum "discretionary authority to determine [] eligibility for benefits and to interpret the terms and provisions of the policy" when making benefit determinations. Under the policy, Unum considers an employee disabled when he or she is "limited from performing the material and substantial duties of [his or her] regular occupation due to [his or her] sickness or injury[.]" The material and substantial duties of an occupation are those "normally required for the performance" of the job and those that "cannot be reasonably omitted or modified." To discern the nature of an employee's regular occupation, Unum looks to the job "as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."

Upon its initial review of Nichols's claim, Unum indicated that it would require additional information from Nichols's physicians about her medical conditions before making a final benefits determination. In November 2002, Unum initiated disability benefits payments to Nichols pending its conclusive decision. In June 2003, Unum notified Nichols by letter that it was unable to approve

benefits to her at that time. Unum stated that three medical reviews of the evidence were conducted

by Unum's on-site physicians and it reviewed the medical information submitted by Nichols's

treating physicians. Based on the reviews, Unum concluded that it was unable to continue benefits

because the information did not support an impairment that would preclude Nichols from performing

the material and substantial duties of her own occupation.

Nichols appealed the denial of benefits. In support of her appeal to Unum, she submitted an

employability assessment that generally concluded she was unemployable as a Quality Assurance

Nurse Case Manager. Carolyn Wolfe, CRC, M.Ed., LPC, provided this analysis of Nichols's

employability:

> The worker trait profiles [from the Dictionary of Occupation Titles] of the nursing positions in which Ms. Nichols has worked were considered to compile her worker trait profile. Her profile was then modified to consider the physical limitations, which have resulted from her chronic pain. Modifications include the following:
>
>> Reduction of her maximum exertion level to Sedentary reflecting her inability to stand or walk for more than short periods of time, or to lift more than 10 pounds occasionally.
>>
>> Elimination of the necessity to climb, balance, crouch, stoop, kneel, and crawl, and to limit reaching and handling to occasional because of her upper extremity pain and weakness.
>
> [A] transferable skills analysis was completed to identify jobs to which Ms. Nichols's skills might transfer if she could perform work in even the sedentary strength range. This analysis revealed a 98% loss of access to jobs that are in any degree related to her work experience and a 100% loss of access to unskilled work. The only job that she theoretically might be able to perform is that of cardiac monitor technician, but this job is generally not available in an isolated status; people who perform that duty must also be able to perform other job duties of which she is not capable. There are no jobs that she can perform with her physical limitations.

No. 05-4096
*Nichols v. Unum Life Ins. Co.*

Unum also referred Nichols's claim for benefits to two vocational experts: Julia Longacre, MA, CRC, and Richard Byard, JD, MS, CRC, its own in-house vocational resource. Longacre concluded that, based on her review of Nichols's education, work capacity, and sedentary work capacity, she would be qualified for the following positions as a registered nurse: Discharge Planner, Field Nurse Case Manager, Insurance Case Manager, Telephone Triage Nurse, Ask-A-Nurse, and Utilization Review. Longacre further acknowledged that these occupations, found to exist in office settings, were generally well-suited to the accommodations necessary in Nichols's case. Unum instructed Byard to complete a vocational assessment of Nichols's job as Nurse Case Manager. Byard provided this analysis of Nichols's ability to return to work:

> The material and substantial duties of this occupation include the coordination of patient care and the completion of utilization and quality review analysis. As generally performed, this occupation requires a sedentary level of physical exertion - calling for the occasional lifting/exertion of force of up to 10 lbs. (While duly noting some of the claimant's job demand that may have exceeded the sedentary level of physical exertion, these activities would be considered specific to her conditions of employment and not necessarily representative of the manner in which the claimant's overall occupation is primarily performed.) . . . .
>
> Comparing the physical demand of the claimant's occupation to the [restrictions and limitations] cited above, the claimant would not, in my view, be precluded from performing the material and substantial duties of her occupation. All of the material and substantial duties of the claimant's occupation can be performed within the parameters described within the [restrictions and limitations].
>
> . . . I have reviewed the [] employability assessment report submitted by the claimant's attorney. This report prepared by Caroline Wolfe [] reached the conclusion that the claimant "has lost all access to the labor market." It appears that much of this conclusion is based on Ms. Wolfe's acceptance of the claimant's medical condition as these have been described by the claimant. . . . I would respectfully disagree with all of Ms. Wolfe's vocational conclusions.

Unum sought a final, exhaustive review of the medical information contained in Nichols's

administrative file from Dr. Stephen Jacobson. Dr. Jacobson generally concluded that although the

record evidence supported some physical restrictions and limitations, the examinations and

diagnoses of Nichols's treating physicians were inconsistent and thus did not support all of Nichols's

reported infirmities. Ultimately, Unum issued a final denial of Nichols's appeal in reliance on the

administrative record, Dr. Jacobson's review, and Byard's vocational assessment.

## II. Discussion

### A. The Standard of Review Applicable to Unum's Decision

Where, as here, an ERISA benefits plan confers discretionary authority on a plan

administrator to determine eligibility for benefits or to construe the terms of the plan, we employ

an arbitrary and capricious standard in reviewing the decision. *McDonald v. Western-Southern Life

Ins. Co.*, 347 F.3d 161, 168 (6th Cir. 2003). "Under this deferential standard, we will uphold a

benefit determination if it is 'rational in light of the plan's provisions.'" *Gismondi v. United Techs.

Corp.*, 408 F.3d 295, 298 (6th Cir. 2005) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d

376, 381 (6th Cir. 1996)). Thus, we will uphold a decision "if it is the result of a deliberate

principled reasoning process, and if it is supported by substantial evidence." *Killian v. Healthsource

Provident Adm'rs, Inc*. 152 F.3d 514, 520 (6th Cir. 1998) (internal quotations and citation omitted).

The arbitrary and capricious standard, however, is not entirely without "teeth." *McDonald*,

347 F.3d at 172. Oftentimes, a plan administrator operates under a potential conflict of interest

because it is both the decision-maker determining which claims are covered, and also the payor of

those claims. *Calvert*, 409 F.3d at 292. In such circumstances, where "the potential for self-interested decision-making is evident," we will take the administrator's conflict of interest into account as a factor in determining whether the administrator's decision was arbitrary and capricious. *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.4 (6th Cir. 2000).

Nichols urges us to reconsider the arbitrary and capricious standard of review as it applies to conflicted plan administrators. While she concedes that the district court correctly considered Unum's conflict of interest as a factor when it applied the "highly deferential" arbitrary and capricious standard in evaluating Unum's benefits denial, Nichols suggests that we shift the burden of proving the reasonableness of its decision, as supported by substantial evidence, to Unum. We decline to adopt Nichols's suggestion. "While several courts have altered the standard of review to something less deferential than the arbitrary and capricious standard where a benefits administrator is operating under a conflict of interest, this Court has not taken that approach." *Calvert*, 409 F.3d at 293 (citation omitted). Indeed, we have stated that the inherent "conflict of interest *does not* displace the arbitrary and capricious standard of review; rather, it is a factor that we consider when determining whether the administrator's decision to deny benefits was arbitrary and capricious." *Evans*, 434 F.3d at 876 (citing *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 506 (6th Cir. 2005)) (emphasis added). Accordingly, we find that the district court applied the appropriate standard of review in evaluating Nichols's claim.

B.  Unum Did Not Act Arbitrarily and Capriciously in Making its Determination

Nichols claims that Unum's decision to deny her long term disability benefits was arbitrary and capricious because it was based upon a vocational opinion that offers no objective support for

its position that the duties of a quality assurance nurse case manager are sedentary in nature. She challenges both the classification of her occupation as sedentary and the reliance on Dr. Byard's vocational opinion as lacking authority. First, argues Nichols, the classification of her job as sedentary was arbitrary and capricious because the Dictionary of Occupational Titles ("DOT") defines a quality assurance coordinator as a position requiring "light" physical capacity, and Byard provides no authority to the contrary in reaching a different conclusion. Second, Nichols claims that Byard's rejection of Wolfe's vocational analysis and conclusion lacks merit because Wolfe "actually used restrictions and limitations similar to Dr. Jacobson in evaluating Nichols's ability to return to work."

Nichols's first claim is unpersuasive and meritless. Unum was "within [its] rights to rely solely on the vocational expert's testimony" in denying benefits. *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995) (in Social Security benefits determination, administrative law judge may rely exclusively on vocational expert testimony, notwithstanding DOT classifications). Nichols correctly acknowledges that Unum, in determining whether an employee can continue performing the material and substantial duties of his or her occupation, considers that employee's regular occupation in the context of the national economy, and that "[o]ne such source of information" is the DOT. Yet, as useful as the DOT may be, there is no mandate that Unum, or the vocational experts employed by Unum, must take into consideration the classifications of the DOT, and in other cases, we have approved decisions based on a vocational expert's testimony, even where such testimony conflicts with DOT descriptions. *See Conn*, 51 F.3d at 610. Accordingly, it was not arbitrary and capricious for Unum to rely on Byard's analysis.

Nichols's second claim appears to be that Unum acted arbitrarily and capriciously in relying on Byard's analysis, rather than Wolfe's analysis. She claims that because Wolfe's vocational analysis resulted in restrictions and limitations largely similar to those reached by Unum's on-site physician, Dr. Jacobson, Unum had no basis upon which to reject Wolfe's analysis.

Nichols's treatment of this issue masks the true nature of Dr. Jacobson's findings. Dr. Jacobson performed the final review of the medical information contained within the administrative record before Unum issued its final decision; this review occurred in the wake of Byard's vocational assessment of the records, in which he disagreed with Wolfe's conclusion - that Nichols had "lost all access to the labor market" - and opined that Nichols could be employed in a sedentary occupation. In his review of the record, Dr. Jacobson did agree that the "combination of her weight and clinical findings of cervical and LS spine suggests [restrictions and limitations] that Ms. Nichols should not perform activities requiring lifting greater than approximately 10 pounds, prolonged standing, prolonged walking, prolonged sitting, and the inability to change body positions as needed from sitting, standing, and walking." However, he also concluded that inconsistencies within the medical records did not support a finding of other impairments complained of by Nichols, including severe diarrhea, hypercoagulation, functional and/or cognitive impairment, or fibromyalgia. Hence, Dr. Jacobson's review of the medical analyses supported Byard's conclusion that Nichols was not so physically restricted and limited that she could not continue to perform some variation of her former occupation with reasonable accommodations.

Based on Dr. Jacobson's medical review and Byard's vocational assessment, Unum fairly concluded that Byard's opinion that Wolfe's conclusion was largely based on her acceptance of

Nichols's descriptions of her medical conditions, rather than based on an objective assessment of Nichols's medical history, was reliable. Unum stated that it "remain[ed] unclear to [Byard] why Ms. Wolfe would assert that Ms. Nichols could not return to her sedentary occupation as a Nurse Case Manager." Thus, Unum ultimately concurred with Byard in his conclusion that the primary demands of the case manager occupation were sedentary and that all of the material and substantial duties required by the job could be performed within the parameters described within Nichols's restrictions and limitations.

We must defer to an administrative appeal committee's decision if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Univ. Hosps.*, 202 F.3d at 846 (internal quotations and citation omitted). Unum has offered such an explanation, and accordingly, we defer to its decision in denying Nichols long-term disability benefits.

**AFFIRMED.**