NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0386n.06

Nos. 22-5234

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 18, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BETH NICHOLE JORDAN, | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | ) ) ) | OPINION |
| Defendant-Appellee. | ) ) | |

Before: COLE, CLAY, and KETHLEDGE, Circuit Judges.

**CLAY, Circuit Judge**. Plaintiff Beth Nichole Jordan appeals to recover disability benefits from a group long-term disability insurance policy governed by § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"). The district court upheld Defendant Reliance Standard Life Insurance Company's denial of Jordan's benefits for the disputed period of coverage. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case with instructions to award Jordan the long-term disability benefits for the disputed period of coverage from August 2, 2016 to September 18, 2017, and for such other relief as the district court finds appropriate and consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

Beth Jordan claims Reliance Standard Life Insurance Company ("Reliance Standard") violated ERISA, 29 U.S.C. § 1132(a)(1)(B), when it denied her disability benefits under its

ERISA-based plan. Jordan worked as a nurse anesthetist; however, starting in July of 2009, she could no longer work due to symptoms of Lyme disease. Jordan then submitted a timely claim for long-term disability benefits under her employer's disability benefits plan, administered by Reliance Standard on July 17, 2009. Jordan's application indicated, with support from medical documents, that she was suffering from symptoms of Lyme disease, which included, "left-sided weakness, numbness, tingling, pain, and burning from scalp to toes." (Administrative Record, R. 100-1, Page ID # 2462). Jordan also indicated that she was being treated for depression and receiving psychotherapy treatment. Based on this information, Reliance Standard determined that Jordan was unable to perform her duties at work and disbursed benefits from October 15, 2009 through May 15, 2015. This appeal concerns long-term disability benefits purportedly owed to Jordan from August 2016 to September 2017.

In 2015, Reliance Standard determined that based on Jordan's medical records she was no longer "totally disabled," and did not qualify for long-term disability benefits. (Administrative Record, R. 100-1, Page ID # 2464). Reliance Standard notified Jordan on May 15, 2015 that her benefits were terminated. Importantly, Reliance Standard's definition of "totally disabled" changed while Jordan was receiving benefits. Prior to October of 2015, Reliance Standard's plan defined "totally disabled" to mean "that as a result of an Injury or Sickness: . . . an Insured cannot perform the material duties of his/her regular occupation." (*Id.*, Page ID # 2476). Beginning on August 1, 2016, the plan required that to be "totally disabled," "an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow." (*Id.*). Jordan timely appealed Reliance Standard's decision through Reliance Standard's internal appellate-review process.

In connection with Jordan's appeal, Reliance Standard requested that Jordan undergo an independent medical examination pursuant to the terms of the policy. However, due to several conflicts, Jordan did not attend her exam.

### B. Procedural History

On February 5, 2016, Jordan filed a complaint against Reliance Standard in the district court, claiming she exhausted administrative remedies prior to commencing an ERISA claim in federal court because Reliance Standard failed to timely decide her appeal. *See Constantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994). On February 11, 2016, Reliance Standard issued its decision regarding Jordan's appeal affirming the denial of the claim based on Jordan's failure to cooperate by failing to attend the rescheduled examination. Reliance Standard then filed a motion to dismiss Jordan's claims based on her failure to exhaust administrative remedies prior to filing a claim in federal court.[1] The district court construed this motion to be a motion for dismissal under Federal Rule of Civil Procedure 12(b)(6).

The district court found that Jordan failed to plead sufficient facts that she had exhausted her administrative remedies under ERISA's provisions. Thus, the district court remanded the claim to Reliance Standard to schedule an independent medical examination and issue a final decision on the merits of Jordan's claim.

---

[1] A plaintiff must exhaust administrative remedies before filing a claim in federal court, which requires that a plan administrator provide a final decision as to that plaintiff's entitlement to benefits. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013). Untimeliness of the administrator's decision is construed to be a denial of benefits, and thus, qualifies as a final decision ripe for review in federal court. 29 C.F.R. § 2560.503-1(i)(1)(i), (i)(3)(i), (l)(2)(i). Upon written notice, and under "special circumstances," an administrator may extend its time to reach a decision, not to exceed ninety days from the plaintiff's request for a review. *Id.* § 2560.503-1(i)(1)(i).

### 1. Reliance Standard's Initial Review

Following the remand, Reliance Standard scheduled an independent medical examination with Dr. Joseph Sentef, Board Certified in Occupational Medicine, to take place on February 23, 2018. Dr. Sentef concluded that Jordan has "functional capacity to perform an occupation within my restrictions and limitations on a full-time basis." (Administrative Record, R. 100-7, Page ID # 2858). However, at the time of Dr. Sentef's assessment, Jordan had already returned to work. When asked if his conclusion would be the same for Jordan's ability to work on May 1, 2015, Dr. Sentef stated that it would not. Dr. Sentef reasoned that "she would not have had the ability to perform consistent full-time work" because "she had significant left-sided weakness with associated neuropathic symptoms and had significant behavioral health symptoms." (*Id.*). After the report, Reliance Standard asked Dr. Sentef when Jordan would have been capable of full-time work. In an addendum to his original report, Dr. Sentef answered Reliance Standard's question, stating:

> There is a scarcity of medical information available during 2016 and 2017, which makes it very difficult to assess her functional capacity during this period. However, she was working on her Master's degree to achieve the title of Nurse Practitioner . . . . In the first year, from [August 2015] through [August 2016], the students attend classes about 3 days a week. In the second year of training, students perform "clinicals" in various specialties, working with physicians on a daily basis including evaluating patients. The claimant did state that getting her nurse practitioner's degree was physically and mentally taxing, but it would seem that she would have full time work capacity within the restrictions that I have provided from August of 2016 going forward, which is during the time period that she participated in her clinicals with physicians.

(*Id.*). Based on Dr. Sentef's independent opinion, on March 20, 2018, Reliance Standard extended Jordan's benefits to August 1, 2016, but denied benefits beyond that date. This finding meant that Reliance Standard owed Jordan benefits from October 15, 2009 to August 1, 2016. Reliance Standard found that, after August 1, Jordan may not have been able to "perform the material duties

of her Regular Occupation" but she was "reasonably suited to perform multiple occupations which require the physical demands of only sedentary work as of August 1, 2016," and therefore was no longer "totally disabled." (*Id.*, Page ID # 2466).

Jordan appealed Reliance Standard's determination, arguing that she was entitled to benefits from August 2, 2016 to September 18, 2017, the date she returned to work. In her appeal, Jordan argued that Dr. Sentef's opinion, upon which Reliance Standard relied, explicitly stated that "[t]here is a scarcity of medical information" for the dates at issue in this claim. (R. 100-8, Page ID # 3245). Importantly, Jordan averred that Dr. Sentef's assumptions around her nursing education was incorrect. Jordan explained in a personal statement filed with her administrative appeal that she started her program in 2012, but due to her disability her nurse practitioner degree took four rather than two years. Further, Jordan asserted that her clinical training began in 2014 and that she completed the program with accommodations, including a reduction of hours she was required to work per day. In July of 2016 she graduated with her degree, but due to her disability, she delayed her licensing exam and eventually passed in January of 2017. At that time, she was diagnosed with breast cancer, underwent treatment, and began working as a nurse practitioner on September 18, 2017. Jordan further stated that she was able to begin looking for jobs after her breast cancer treatment in July of 2017.

During this administrative appeal, Reliance Standard submitted Jordan's medical files to two independent peer reviewers, Dr. Gregory Smith, Board Certified in Occupational Medicine, and Dr. Matthew Shupe, Board Certified Oncologist. Dr. Smith reviewed Jordan's medical files, including Dr. Sentef's report, and addressed Jordan's condition based on her Lyme disease diagnosis and history of breast cancer. Dr. Smith noted that Lyme disease was documented by Jordan's specialist but the documentation was not coupled with medical tests, so he found that "the

condition is primarily self-reported in nature." (Administrative Record, R. 100-8, Page ID # 3273). Further, Dr. Smith observed that, from August 1, 2016 to September 18, 2017, there were no "medical records relevant to the claimant's condition from an Occupational Medicine perspective." (*Id.*, Page ID # 3268). Dr. Smith did not address Sentef's conclusions as to Jordan's academic requirements and whether they accurately reflected whether she could work. Based on the medical records provided to him, Dr. Smith listed certain activities and the frequency with which he believed Jordan could perform them in an eight-hour workday, from August 1, 2016 to March 30, 2017 and from May 16, 2017 to September 18, 2017. Dr. Smith's report did not provide a definitive conclusion as to whether Jordan could work full-time during this period; however, using the determinations by Dr. Smith, Reliance Standard concluded that Jordan could work full time in a sedentary position. From March 31, 2017, to May 15, 2017, Dr. Smith found that Jordan "was not suitable for any work due to being post-op for bilateral mastectomy with long term drains in place, and use of opioids."[2] (*Id.*, Page ID # 3274).

Dr. Shupe did not address Jordan's Lyme disease diagnosis, and only opined on Jordan's history of breast cancer. Based on Dr. Shupe's oncology perspective, he concluded that Jordan "had work capacity on a full-time consistent basis" from August 1, 2016, to September 18, 2017. (*Id.*, Page ID # 3286). Dr. Shupe qualified his report with a disclaimer, however, that "[i]t appears that the claimant may have functional impairment from required surgery due to her diagnosis of breast cancer but I will defer assessment of any functional impairment to the reviewing surgeon as this is outside my area of expertise." (*Id.*)

---

[2] Reliance Standard argued before the district court that this period is irrelevant because Jordan was no longer covered by insurance as of August 2016, thus, her coverage under the Reliance Standard policy had ended by the time of the March 30, 2017 procedures. However, Dr. Smith's determination, and Reliance Standard's disregard for his opinion, demonstrate a lack of a full and fair review of Jordan's claim.

On January 8, 2019, based on the independent medical reviews, Reliance Standard notified Jordan that it was upholding its decision that benefits were not payable beyond August 1, 2016. Reliance Standard acknowledged Jordan submitted a form by her treating physician, Dr. Mark Heinsohn, in response to the peer reviews submitted by Dr. Smith and Dr. Shupe. Dr. Heinsohn's report indicated that Jordan suffered from "ongoing symptoms of pain, fatigue, concentration impairment, [and] memory impairment [which] precluded her from all work function," during the relevant time period. (Administrative Record, R. 100-1, Page ID # 2487). Neither Dr. Smith nor Dr. Shupe had an opportunity to review Dr. Heinsohn's conclusion as it was completed after their reports were submitted. However, Dr. Smith attempted to call Dr. Heinsohn to conduct a peer-to-peer discussion during the completion of their reports but was unable to reach him. Reliance Standard did not change its decision in response to Dr. Heinsohn's report and concluded that he simply "did not agree with the peer reports." (*Id.*).

## 2. District Court's Second Remand Order

After Reliance Standard's denial of Jordan's benefits, the parties filed motions for summary judgment in district court. Jordan argued that Reliance Standard's determination was "arbitrary and capricious" and violated her right to a "full and fair review" pursuant to ERISA's requirements because it failed to address and review her explanation for how her class and clinical schedules differed from the norm, and independently weigh conflicting medical opinions. (Pl.'s Mot. for Summ. J., R. 106, Page ID # 3861–70). Reliance Standard, in its motion for judgment, maintained that there is sufficient evidence in the record to support its determination, and that no information was withheld from the peer reviewers.

The district court found that the "administrative record does not support [Reliance Standard's] assertion that it considered the statements from [Jordan's] appeal letter." (Second

Remand Order, R. 114, Page ID # 3963). The district court reasoned that the peer reviewers, as well as Reliance Standard, neglected to discuss how Jordan's part-time clinicals factored into their analysis, which was material to the claim. As to Reliance Standard's independent review of the medical opinions, the district court found that Reliance Standard gave no weight to Dr. Heinsohn's findings, and simply concluded that he "did not agree with the peer reports," without any further information. (*Id.*, Page ID # 3966). Further, the district court held that the reports submitted by Dr. Smith and Dr. Shupe were "inadequate." (*Id.*, Page ID # 3967). Dr. Shupe was only qualified to assess Jordan's breast cancer diagnosis, and Dr. Smith did not physically examine Jordan, but relied on medical files provided to him, namely Dr. Sentef's report, which was based on Jordan's physical condition as of February 23, 2018. The district court expressed particular concern regarding Dr. Smith's lack of any explanation on how he deduced Jordan's physical capabilities as they were in August of 2016. Thus, the district court concluded that Reliance Standard's failure to provide an explanation was "arbitrary" and "denied Jordan the 'full and fair review' to which she was entitled." (*Id.* (quoting *Glenn v. MetLife*, 461 F.3d 660, 672 (6th Cir. 2006)). The case was remanded to Reliance Standard to conduct a "full and fair review" of Jordan's claim, with instructions that it provide "specific reasons" for its conclusions as to Dr. Heinsohn's opinion and "fully and fairly consider how Jordan's academic schedule factors into its determination." (*Id.*, Page ID # 3968).

After the district court entered the second remand order, Jordan filed a motion to clarify. Jordan requested that the district court reopen the administrative record and allow her to submit new evidence from a professor discussing her conditions while she completed the nursing program. The district court denied Jordan's request, explaining that Jordan's claim regarding her academic

schedule did not need supplementing, and the issues described in the remand order could be decided by Reliance Standard based on the entire existing record.

### 3. Reliance Standard's Second Review

Following the second remand, Reliance Standard issued a decision on January 15, 2021, reaffirming its conclusion that Jordan was not "totally disabled" as of August 1, 2016. (Administrative Record, R. 123-1, Page ID # 4012). Reliance Standard again relied upon the opinions of Dr. Smith, Dr. Shupe, and Dr. Sentef. However, in accordance with the district court's remand instructions, Reliance Standard reviewed Dr. Heinsohn's report. Dr. Heinsohn's report indicated that Jordan was disabled from May 2015 to September 2017, and that she continued to experience symptoms related to her Lyme disease diagnosis during that period.

Reliance Standard first discredited Dr. Heinsohn's report by pointing to his 2014 assessment of Jordan's physical abilities, averring that surveillance evidence from 2015 showed Jordan performing physical activities that were inconsistent with Dr. Heinsohn's assessment. For example, Dr. Heinsohn reported in 2014 that Jordan could not perform a simple grasp or bend at the waist; however, Reliance Standard alleges that surveillance footage from 2015 shows that she was seen holding a leash for her dog and bending over to pet her dog. The source and basis of this surveillance evidence was not discussed in Reliance Standard's letter.

Reliance Standard also averred that Dr. Heinsohn's report did not add new information that was not already in the record—Dr. Shupe and Dr Smith reviewed Dr. Heinsohn's medical notes while constructing their reports. However, Reliance Standard did not state whether Dr. Shupe and Dr. Smith reviewed Dr. Heinsohn's report disagreeing with their conclusions. Instead, it indicated only that that each doctor reviewed Dr. Heinsohn's *past* medical notes on Jordan's diagnosis.

Further, Reliance Standard found that Dr. Heinsohn's opinion did not "outweigh the other evidence because it does not account for Ms. Jordan's ability to complete an advanced nursing program." (*Id.*, Page ID # 4021). Reliance Standard recognized Jordan's modified schedule while in school; however, it stated that even though Jordan had "shortened shifts and proceeded at a slower pace, she was still performing work duties above what Dr. Heinsohn reported her capable of." (*Id.*). Although Jordan indicated she experienced cognitive impairments, she did not submit neurological testing, and thus Reliance Standard found that her successful completion of the nursing program discounted any impairment she faced. Moreover, Reliance Standard noted that Jordan stated that she began searching for a job in January of 2017, which indicated that she was not totally disabled at or after this time. This, however, does not account for Jordan's breast cancer diagnosis, which delayed her job search until July of 2017.

Reliance Standard concluded that "[a]t issue is not whether Ms. Jordan could return to her old job as a Nurse. It is whether she was capable of performing *any occupation* as of August 1, 2016." (*Id.*). Because Reliance Standard found that Jordan was capable of sedentary work, such as such as an admitting officer, director, or residence supervisor, it found that she was not considered totally disabled under the policy.

**4. District Court's Review of Reliance Standard's Second Review**

Following Reliance Standard's determination, the parties again filed motions for summary judgment. The district court first found that Reliance Standard had a conflict of interest because it is responsible for both reviewing the merits of the claim and paying for the benefits, if approved. However, because Reliance Standard submitted Jordan's file to two doctors, did not categorically deny Jordan's claim, and adjusted benefits based on the doctor's findings to August 2016, the district court found that Reliance Standard engaged in a "meaningful review." (Final Order, R.

130, Page ID # 4169–4170). Second, the district court upheld its decision to deny Jordan's request to supplement the record. Finally, the district court found that Jordan did not meet "her burden to show that she remained disabled from August 2016 to September 2017." (*Id.*, Page ID # 4173). The district court reasoned that Jordan's medical records as to her disability in the relevant time period are sparse, and although Dr. Heinsohn reiterated that Jordan was disabled until September of 2017, "he did not point to specific evidence or medical records that substantiate his opinion." (*Id.*). In a reversal of its prior opinion, the district court opined that the fact that Jordan was able to finish her nursing program and successfully take her boards counteracted Dr. Heinsohn's assessment of her physical and cognitive limitations.

The district court concluded that Reliance Standard was responsive to the remand instructions, considered Jordan's accommodations while completing her nursing program, and correctly noted that Jordan admitted she began looking for a job in January of 2017. Further, the district court also considered Dr. Sentef's, Dr. Shupe's and Dr. Smith's opinions, and found that reliance on their opinions was warranted because they corroborated the other medical evidence in the record. The district court discounted Dr. Heinsohn's medical opinion based on the inconsistencies with Heinsohn's reports, Jordan's behavior caught on surveillance, and Dr. Heinsohn's failure to address Jordan's ability to complete her nursing program. Ultimately, the district court found that Reliance Standard's determination that "Jordan was not qualified to continue to receive total disability benefits was not arbitrary or capricious but supported by the administrative record," and dismissed Jordan's claims. (*Id.*, Page ID # 4176). Subsequently, Jordan filed this appeal.

## II.  DISCUSSION

### A.  Standard of Review

This Court reviews de novo the district court's judgment on the administrative record regarding an ERISA denial of benefits. *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008).  When, as in this case, the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits, we will reverse the administrator's decision only if it is "arbitrary or capricious." *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005). Under this standard, we uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).  However, "[t]he arbitrary-and-capricious standard . . . does not require us merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir.2004) (citation omitted).  Instead, we are required to review "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).  Without such a requirement, "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence—no matter how obscure or untrustworthy—to support a denial of a claim for ERISA benefits." *Id.*

Further, "a plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician." *Evans v. UnumProvident Corp.,* 434 F.3d 866, 877 (6th Cir. 2006); *see also Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 833 (2003).  However, "when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA

benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious [if] it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald,* 347 F.3d at 169. Importantly, "medical data, without reasoning, cannot produce a logical judgment about a claimant's work ability." *Elliott v. Metro. Life Ins. Co.,* 473 F.3d 613, 618 (6th Cir. 2006).

## B. Analysis

Reliance Standard's conclusory findings are not sufficiently supported by credible medical evidence. Accordingly, the Court finds that Reliance Standards acted arbitrarily and capriciously. The district court's approach in evaluating the evidence following Reliance Standard's second review was incorrect and reached the wrong conclusion. The final denial letter fails to adequately explain the reasons for its decision. The eleven-page letter uses approximately one paragraph to address the district court's initial concerns. The majority of the letter reiterates the medical reports already reviewed and contemplated by the district court in its second remand order and neglects to provide additional information to support its decision to deny Jordan's claim.

The district court gave short shrift to the opinion of Dr. Heinsohn as Jordan's treating physician, and gave improper weight to the medical opinions of Dr. Sentef, Dr. Smith and Dr. Shupe. Reliance Standard provided no explanation as to how Dr. Sentef's, Dr. Smith's, and Dr. Shupe's medical opinions can be considered reliable, when each disclaimed the ability to fully assess Jordan's disability from August 2016 to September 2017. Nor did Reliance Standard attempt to remedy the errors and unsupported assumptions in the three doctors' reports.

We first turn to Dr. Sentef's flawed opinion. Dr. Sentef concededly lacked any medical records for Jordan from August 2016 to September 2017. Dr. Sentef's sole basis for thinking that Jordan could have worked full-time in that period was his assumption that she had started full-time clinical training in August 2016. But as Jordan explained to Reliance Standard before the district court's remand order, she had not, in fact, participated in any full-time clinical rotations. Dr. Sentef's report therefore provided no evidence for Reliance Standard's conclusion that Jordan was not disabled after August 2016.

As to Dr. Smith's report, in determining Jordan's physical ability during the relevant time period, he provides no explanation as to how he reached his conclusions, and appears to rely only on Dr. Sentef's physical examination of Jordan in February of 2018. Needless to say, Jordan's physical ability in 2018 is not evidence of her ability from 2016 to 2017. Further, Reliance Standard disregards Dr. Smith's definitive conclusion that from March 31, 2017, to May 15, 2017, Jordan was not suitable for any work. Finally, as discussed above, Dr. Shupe's medical conclusions are irrelevant in evaluating Jordan's claim because he only considered Jordan's breast cancer diagnosis, not the Lyme disease that she says caused her disability. And even in his evaluation of her cancer diagnosis, Dr. Shupe declined to opine on how the treatment of her cancer may have impacted her wellbeing.

This inappropriately selective consideration of Jordan's medical record was compounded by the fact that the independent medical peer reviewers were apparently not benefited by Dr. Heinsohn's opinion disagreeing with their reports. Dr. Heinsohn's report indicated that Jordan suffered from "ongoing symptoms of pain, fatigue, concentration impairment, [and] memory impairment [which] precluded her from all work function," during the relevant time period. (R.

100-1, Page ID # 2487). Dr. Heinsohn provides this medical opinion based on his role as her treating physician during the relevant time period.

Reliance Standard's attempts to discredit Dr. Heinsohn's report are unpersuasive. Reliance Standard first points to surveillance evidence from 2015 that purportedly contradicts Dr. Heinsohn's evaluations of Jordan's condition in 2014. However, the benefits Jordan received in 2015 are not in dispute; the issue is whether she was entitled to benefits from August 2016 to September 2017. Further, Reliance Standard had this information in 2015, but still concluded that Jordan was unable to return to work. Second, Reliance Standard noted that Dr. Shupe and Dr Smith reviewed Dr. Heinsohn's medical notes while constructing their reports, and thus were adequately informed of Heinsohn's opinion. However, Dr. Shupe and Dr. Smith were not in receipt of Dr. Heinsohn's report disagreeing with their conclusions, nor was Dr. Smith able to contact Dr. Heinsohn's for a peer-to-peer consultation. And the district court had already held, in its remand order, that Dr. Shupe's and Smith's opinions were an inadequate basis for rejecting Jordan's claim. Reliance Standard simply has not done enough to discredit Dr. Heinsohn's opinion—especially considering that Dr. Heinsohn's report is the only evidence on the record that can account for Jordan's condition during the relevant time period, and the medical opinions utilized by Reliance Standard are riddled with errors.

Reliance Standard is merely "arbitrarily disregard[ing] reliable medical evidence proffered by [Jordan]," *Evans*, 434 F.3d at 877, and provides the Court with no "reasoned explanation" that Dr. Sentef's, Dr. Shupe's and Dr Smith's opinions are accurate representations of Jordan's

conditions during the relevant time period, *McDonald,* 347 F.3d at 169.[3]   Instead, Reliance

Standard simply resubmitted reports the district court had already held to be inadequate.

Accordingly, we hold that Reliance Standard's determination cannot withstand scrutiny under the

"arbitrary or capricious" standard of review.  *See McDonald*, 347 F.3d at 170–71 ("The mere

possibility that a participant in an ERISA plan might be able to return to some type of gainful

employment, in light of overwhelming evidence to the contrary, is an insufficient basis upon which

to support a plan administrator's decision to deny that participant's claim for LTD benefits.").

Under circumstances where a plan administrator's conclusion is "simply contrary to the

facts . . . . remand is not justified to give the plan administrator a second bite at the apple," or in

this case, a third bite at the apple.  *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581

F.3d 355, 373–74 (6th Cir. 2009) (citations and quotations omitted); *see also Williams v. Int'l*

*Paper Co.,* 227 F.3d 706, 716 (6th Cir. 2000) (remanding for retroactive reinstatement of benefits

where plan administrator had opportunity to review all evidence and did so in a manner that was

arbitrary and capricious).[4]  In this case, Dr. Heinsohn's report and lengthy treatment notes—which

---

[3] Reliance Standard also argues that "[a]t issue is not whether Ms. Jordan could return to her old job as a Nurse.  It is whether she was capable of performing *any occupation* as of August 1, 2016." (Administrative Record, R. 123-1, Page ID # 4021).  Because Reliance Standard found that Jordan was capable of sedentary work, such as such as an admitting officer, director, or residence supervisor, it found that she was not considered totally disabled under the policy during the relevant time period.  The policy's terminology is not at issue, and the terms are read to be true; however, Reliance Standard offers no reliable medical evidence to make a finding that she was capable of working in any occupation as of August 2016.  The fact that she was able to look for work in July of 2017 does not demonstrate her ability to work at that time, especially given Dr. Heinsohn's medical opinion that she was unable to return to work until September of 2017.  Reliance Standard's conclusory statement is not enough to counteract Dr. Heinsohn's medical opinion.

[4] Jordan presents several procedural arguments in her appeal in support of her claim that the district court erroneously upheld the denial of her benefits; however, because we find that the district court erred based on its substantive reasoning, we find it unnecessary to address Jordan's remaining arguments.

cover frequent appointments with Jordan during the relevant period—clearly establish Jordan's entitlement to benefits. We therefore reverse the judgment of the district court and remand the case with directions to award Jordan long-term disability benefits for the period of August 2, 2016 to September 18, 2017.

## III. CONCLUSION

For the aforementioned reasons, We **REVERSE** the judgment of the district court and **REMAND** the case with directions to award Jordan long-term disability benefits for the period of August 2, 2016, to September 18, 2017, and for such other relief as the district court finds appropriate in view of our ruling in this case.[5]

---

[5] Jordan also requested that this Court, based on a pending motion for attorney fees below, "make a ruling on the availability of attorney's fees based on [her] previous success." (Pl.'s Br., ECF No. 25, 55). The district court ruled on attorney fees on March 31, 2023, after the filing of Jordan's appeal. We leave to the district court the issue of whether additional attorney fees may be warranted.